UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In Re:

KING CENTER, CORP., an unincorporated
company/business association,                               Chapter 11

                Debtor.

                                                          Case No. 1-15-44165 (ESS)

------------------------------------------------------------------x
KING CENTER CORP., an unincorporated
company/business association,

                Plaintiff,

        v.                                                            Adv. Pro. No.
                                                        No. 1-15-01167 (ESS)

CITY OF MIDDLETOWN,

                Defendant.
------------------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANT'S MOTION TO DISMISS

                                                                  ZUKERMAN GORE BRANDEIS
                                                                     &CROSSMAN, LLP
                                                                      Ted Poretz
                                                                      Jesenia Ruiz de la Torre
                                                            Eleven Times Square
                                                           New York, New York 10036
                                                           (212) 223-6700
                                                           *Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................II

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.      KING CENTER'S CLAIMS ARE TIMELY ..................................................................... 3

        A.      THIS ACTION WAS BROUGHT WITHIN THE DCL'S
              6-YEAR LIMITATIONS PERIOD ...................................................................... 3

        B.      ARTICLE V, SECTION 105 OF THE CITY CHARTER
              DOES NOT BAR THIS ACTION ........................................................................ 4

II.     THE COMPLAINT PROPERLY PLEADS A FRAUDULENT
       CONVEYANCE CLAIM ................................................................................................... 5

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Canandaigua Land Dev., LLC*, 521 B.R. 457
(Bankr. W.D.N.Y. 2014) ............................................................................................... 10

*Clinton Cnty. Treasurer v. Wolinsky*, 511 B.R. 34
(Bankr. N.D.N.Y. 2014) ............................................................................................... 10

*Cnty. of Clinton v. Warehouse at Van Buren St., Inc.*, 496 B.R. 278
(Bankr. N.D.N.Y. 2013) ............................................................................................ 9, 10

*Doukas v. George*, 12 Misc. 2d 958 (Sup. Ct. Kings County 1958) ............................................. 7

*Harris,* No. 01-Bk.-10365, 2003 WL 25795591
(Bankr. N.D.N.Y. March 11, 2003) ............................................................................... 10

*Hearn 45 St. Corp. v. Jano*, 283 N.Y. 139 (1940) ......................................................................... 7

*Herkimer Forest Products Corp.,* No. 04-Bk.-13978
(Adversary Pro. No. 04-90148), 2005 WL 6237559
(Bankr. N.D.N.Y. July 26, 2005) .................................................................................. 10

*Langan v. First Trust & Deposit Co.*, 101 N.Y.S.2d 36
(4th Dep't 1950) .............................................................................................................. 7

*Lefkowitz v. Finkelstein Trading Corp.*, 14 F.Supp. 898
(S.D.N.Y.1936) ............................................................................................................... 7

*Matter of Tax Foreclosure No. 35*, 71 N.Y.2d 863 (1988) ............................................................ 5

*Murphy,* 331 B.R. 107 (Bankr. S.D.N.Y. 2005) .......................................................................... 10

*Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005) .............................................................................. 6

*Swan St. Corp. v. City of Buffalo*, 206 Misc. 372 (Sup. Ct. 1954) ............................................... 5

*Tax Foreclosure Action No. 44*, 23 A.D.3d 290 (1st Dep't 2005) ................................................ 5

*Thaler v. Korn*, No. 13-CV-3768(SJF), 2014 WL 1154059
(E.D.N.Y. Mar. 19, 2014) .............................................................................................. 6

**Other Authorities**

11 U.S.C. § 101(54) ....................................................................................................................... 9

11 U.S.C. § 546(a) .................................................................................................................... 2, 4

11 U.S.C. § 548(a)(l )(B) .............................................................................................................. 9

11 U.S.C.A. § 544 ............................................................................................................................ 3

CPLR § 213(8) ............................................................................................................................ 3, 4

DCL § 15 .......................................................................................................................................... 7

DCL § 270 ............................................................................................................................... 6, 7, 9

DCL § 274 ............................................................................................................... 2, 3, 5, 6, 7, 9

DCL §§ 273 ............................................................................................................................ 2, 6, 7

§ 1, Uniform Fraudulent Transfer Act, 7A Uniform Laws Annot. 647 (1985) .............................. 7

Middletown City Charter Art. 5 § 105 ........................................................................................... 5

Plaintiff King Center Corp. ("King Center"), by and through its attorneys, Zukerman Gore Brandeis & Crossman LLP, hereby submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss.

## INTRODUCTION

King Center commenced this adversary proceeding seeking to remedy a palpable and gross injustice: transfer by the City of Middletown ("Middletown" or the "City") of King Center's only asset – a commercial office building (the "Property") valued by Middletown itself at approximately $1 million – through a compelled (and private) conveyance of the Property to itself in order to satisfy a tax lien of about 3% as much.  Though Middletown did not start as the owner of the Property, it claims to have acquired title by preparing a deed in which it was both party of the first and party of the second part.  No court order, and no judicial supervision of any kind, attended this conveyance, and by the time King Center sought to redeem the Property by paying its tax liens  –  having been sent confusing letters containing contradictory and mutually exclusive deadlines by which to do so –  King Center's property had already been conveyed to Middletown.

While we remain unaware of Middletown's fundamental authority to pretend that it owned the Property in the first place in order to convey the Property to itself without court order or consent, Middletown's conduct, whether or not by design, served to establish for itself a vast and unfair windfall.  However compelling a municipality's interest is in the collection of lawful taxes, such an interest is not served by allowing Middletown to convey to itself a Property worth 30 times the unpaid tax lien and retain the full excess value for itself.  A municipality's legitimate interest in collecting tax revenue cannot be used to justify its unjust enrichment.  Here, in order to collect a $31,000 tax bill, Middletown now owns a Property that, at the time of the conveyance, was worth as much as $1 million.

Now, in order to protect this patently unfair windfall, Middletown seeks to dismiss this adversary proceeding on two highly technical grounds.  First,  Middletown claims that Article V,

Section 105 of its own City Charter, which contains a two-year limitations period for anyone seeking to "set aside" a "tax deed," trumps the deadlines in both 11 U.S.C. §546(a) and New York Debtor and Creditor Law §§273 and 274 (the "DCL"), and therefore renders this proceeding untimely.  Second, Middletown asserts that even if timely, King Center can plead no claim under the DCL because the DCL does not apply to an "involuntary" conveyance such as this one because the conveyance must be made, in the case of DCL §273, "by a person who is or will be thereby rendered insolvent" and, in the case of DCL §274, by the "person [who] is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital…" DCL §§ 273 and 274.

We respectfully submit that Middletown is wrong on all counts.  The City Charter simply does not trump an act of Congress or the DCL, each of which prescribes a longer limitations period which King Center has indisputably satisfied.  In any event, this is not an action to "set aside" Middletown's self-dealing conveyance to itself.  King Center's Complaint seeks, in the alternative, an order directing Middletown "to return the [Property] or its value to Plaintiff." That alone should end this inquiry.

And, though fraudulent conveyance issues as to tax foreclosures have more often been analyzed by Section 548(a) of the Bankruptcy Code, it is simply not true that Section 544(a) does not encompass "involuntary" conveyances; the DCL, to which Section 544(a) relates back, defines a "conveyance" to include "*every* conveyance made without a fair consideration," (emphasis added) whether or not "voluntary" and even the authorities cited by Middletown agree. *See infra* Section II.  Recognizing this problem, Middletown asks the Courts to infer that involuntary conveyances are only treated by the DCL where there is fraud or collusion, but the authorities impose no such condition.

Finally, the Court should reject out of hand the City's effort to use its own misbehavior as a sword to stifle judicial review of its acts. It should not allow the fact that King Center is not named on the deed to deprive it of the opportunity to ask the Court to review whether this conveyance was fraudulent. If it is nominally true that Middletown was the named party of the

first part to the quitclaim deed, it is only because Middletown chose to act unilaterally, without judicial supervision, in preparing a deed from itself to itself for a property it did not then own. It exalts fiction over fact to exalt the form of this quitclaim: Middletown knows that it did not own the Property until the date of its conveyance, and no judge authorized the transfer of title. Middletown deeded a property it did not own to itself, but the Court should see through the fiction and recognize this transaction as effectively one from King Center – the Property's owner until the very moment of the quitclaim – to Middletown in order for the conveyance to be effective.

The fact that actionable conveyances include "involuntary" conveyances – those where the property owner did not herself agree to convey title – should be sufficient to defeat this branch of Middletown's motion. We also respectfully urge the Court not to allow Middletown to use as a sword its decision unilaterally to take the Property using a fictive form of deed as a means to prevent King Center from proving that this was a fraudulent conveyance, and one well in keeping with the modern trend of scrutinizing tax foreclosures such as this under a fraudulent conveyance lens.

## ARGUMENT

## I. KING CENTER'S CLAIMS ARE TIMELY

### A. This Action was Brought Within the DCL's 6-Year Limitations Period

King Center has brought this adversary proceeding under 11 U.S.C.A. § 544, which authorizes a Trustee to void transfers of property of the debtor pursuant to applicable state law. Using the federal authority of Section 544, King Center has brought claims that refer back to New York's DCL §§ 273 and 274.

There is no dispute that claims brought under these provisions are governed by CPLR §213(8), which permits claims commenced within six years from the date the cause of action arose. *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 169 (W.D.N.Y. 2003) (applying CPLR 213(8)'s six-year period to claims under the DCL). The

statute of limitations period is measured from the date of the occurrence of the allegedly fraudulent conveyance. *Id.*

King Center's claims arose on October 22, 2010, the date Middletown executed a quitclaim from itself to itself and thereby conveyed title over the Property to itself. On September 18, 2015, well within the six-year limitations period applicable to the DCL, King Center commenced this action. King Center's Complaint, grounded in the DCL, is clearly timely under CPLR § 213(8).

The Court should also keep in mind that 11 U.S.C. §546(a) also authorizes the Trustee to proceed under Section 544.

> An action or proceeding under section 544 . . . of this title may not be commenced after the earlier of (1) the later of (A) 2 years after the entry of the order for relief . . . , or (B) 1 year after the appointment or election of the first trustee; or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). This action was filed only days after King Center filed its Petition, well in advance of the two-year period authorized in Section 546(a). It is timely.

### B.    Article V, Section 105 of the City Charter Does Not Bar This Action

In a spectacular attempt at gotcha litigation, Middletown claims that Article V, Section 105 of its City Charter bars this action, notwithstanding that it is plainly timely under the DCL and Section 546(a) of the Bankruptcy Code. A review of that provision itself – so arcane that we have found no decisions interpreting it – disproves Middetown's argument.

The City Charter provision provides as follows:

> Every *tax deed* executed, and delivered by the City of Middletown pursuant to any general or special law providing for the foreclosure of a tax lien by action in rem, shall be presumptive evidence that the action and all proceedings therein and all proceedings prior thereto from and including the assessment of the lands affected and all notices required by law were regular and in accordance with all provisions of law relating thereto. After two years from the date of the recording of such deed the presumption shall be conclusive . . . *No action to set aside such deed* may be maintained unless the action is commenced . . . prior to the time that the presumption becomes conclusive.

4

Middletown City Charter Art. 5 § 105 (emphasis added). The two-year limitations period on its face, only applies to actions "to set aside" a tax deed.[1] King Center seeks far more than merely this relief; as cited above, King Center asks the Court to avoid the fraudulent conveyance or in the alternative to award it the value of the Property. The City Charter provision does not apply to actions seeking a monetary award.

In the absence of any reported authority arising out of Article V, Section 105, we reviewed other New York state and municipal statutes that contain similar procedural presumptions. Our research reveals that such statutes are generally only used to bar claims of a procedural nature. *See, e.g., Matter of Tax Foreclosure No. 35*, 71 N.Y.2d 863, 865 (1988) (allegation involving lack of notice); *In rem Tax Foreclosure Action No. 44*, 23 A.D.3d 290, 291 (1st Dep't 2005) (same); *149-155 Swan St. Corp. v. City of Buffalo*, 206 Misc. 372, 374 (Sup. Ct. 1954) (allegation that notices and descriptions did not conform to applicable rules).

We have found no precedent that even remotely authorizes a local ordinance such as Section 5 to bar a fraud claim, let alone a fraudulent conveyance claim that arises under federal and state law. Where, as here, King Center challenges not the procedure by which Middletown conveyed itself the Property (questionable though it may be), but rather whether the conveyance was accompanied by "fair consideration," the claim falls outside the narrow ambit of the City Charter limitations period.

## II. THE COMPLAINT PROPERLY PLEADS A FRAUDULENT CONVEYANCE CLAIM

New York's DCL § 273 broadly allows a Court to avoid as fraudulent, "every conveyance made . . . by a person who is or will be thereby rendered insolvent . . . without regard to his actual intent if the conveyance is made . . . without a fair consideration." Similarly, DCL § 274 allows a Court to avoid as fraudulent "[e]very conveyance made without fair

---

[1] The deed at issue here is styled a "quitclaim" deed. King Street does not know whether this deed constitutes a "tax deed" under the Middletown City Charter, but if it should not, that would provide another reason for the Charter provision not to apply here.

5

Plaintiff King Center Corp. ("King Center"), by and through its attorneys, Zukerman Gore Brandeis & Crossman LLP, hereby submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss.

## INTRODUCTION

King Center commenced this adversary proceeding seeking to remedy a palpable and gross injustice: transfer by the City of Middletown ("Middletown" or the "City") of King Center's only asset – a commercial office building (the "Property") valued by Middletown itself at approximately $1 million – through a compelled (and private) conveyance of the Property to itself in order to satisfy a tax lien of about 3% as much.  Though Middletown did not start as the owner of the Property, it claims to have acquired title by preparing a deed in which it was both party of the first and party of the second part.  No court order, and no judicial supervision of any kind, attended this conveyance, and by the time King Center sought to redeem the Property by paying its tax liens  –  having been sent confusing letters containing contradictory and mutually exclusive deadlines by which to do so –  King Center's property had already been conveyed to Middletown.

While we remain unaware of Middletown's fundamental authority to pretend that it owned the Property in the first place in order to convey the Property to itself without court order or consent, Middletown's conduct, whether or not by design, served to establish for itself a vast and unfair windfall.  However compelling a municipality's interest is in the collection of lawful taxes, such an interest is not served by allowing Middletown to convey to itself a Property worth 30 times the unpaid tax lien and retain the full excess value for itself.  A municipality's legitimate interest in collecting tax revenue cannot be used to justify its unjust enrichment.  Here, in order to collect a $31,000 tax bill, Middletown now owns a Property that, at the time of the conveyance, was worth as much as $1 million.

Now, in order to protect this patently unfair windfall, Middletown seeks to dismiss this adversary proceeding on two highly technical grounds.  First,  Middletown claims that Article V,

Section 105 of its own City Charter, which contains a two-year limitations period for anyone seeking to "set aside" a "tax deed," trumps the deadlines in both 11 U.S.C. §546(a) and New York Debtor and Creditor Law §§273 and 274 (the "DCL"), and therefore renders this proceeding untimely.  Second, Middletown asserts that even if timely, King Center can plead no claim under the DCL because the DCL does not apply to an "involuntary" conveyance such as this one because the conveyance must be made, in the case of DCL §273, "by a person who is or will be thereby rendered insolvent" and, in the case of DCL §274, by the "person [who] is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital…" DCL §§ 273 and 274.

We respectfully submit that Middletown is wrong on all counts.  The City Charter simply does not trump an act of Congress or the DCL, each of which prescribes a longer limitations period which King Center has indisputably satisfied.  In any event, this is not an action to "set aside" Middletown's self-dealing conveyance to itself.  King Center's Complaint seeks, in the alternative, an order directing Middletown "to return the [Property] or its value to Plaintiff." That alone should end this inquiry.

And, though fraudulent conveyance issues as to tax foreclosures have more often been analyzed by Section 548(a) of the Bankruptcy Code, it is simply not true that Section 544(a) does not encompass "involuntary" conveyances; the DCL, to which Section 544(a) relates back, defines a "conveyance" to include "*every* conveyance made without a fair consideration," (emphasis added) whether or not "voluntary" and even the authorities cited by Middletown agree. *See infra* Section II.  Recognizing this problem, Middletown asks the Courts to infer that involuntary conveyances are only treated by the DCL where there is fraud or collusion, but the authorities impose no such condition.

Finally, the Court should reject out of hand the City's effort to use its own misbehavior as a sword to stifle judicial review of its acts. It should not allow the fact that King Center is not named on the deed to deprive it of the opportunity to ask the Court to review whether this conveyance was fraudulent. If it is nominally true that Middletown was the named party of the

first part to the quitclaim deed, it is only because Middletown chose to act unilaterally, without judicial supervision, in preparing a deed from itself to itself for a property it did not then own. It exalts fiction over fact to exalt the form of this quitclaim: Middletown knows that it did not own the Property until the date of its conveyance, and no judge authorized the transfer of title. Middletown deeded a property it did not own to itself, but the Court should see through the fiction and recognize this transaction as effectively one from King Center – the Property's owner until the very moment of the quitclaim – to Middletown in order for the conveyance to be effective.

The fact that actionable conveyances include "involuntary" conveyances – those where the property owner did not herself agree to convey title – should be sufficient to defeat this branch of Middletown's motion. We also respectfully urge the Court not to allow Middletown to use as a sword its decision unilaterally to take the Property using a fictive form of deed as a means to prevent King Center from proving that this was a fraudulent conveyance, and one well in keeping with the modern trend of scrutinizing tax foreclosures such as this under a fraudulent conveyance lens.

## ARGUMENT

### I. KING CENTER'S CLAIMS ARE TIMELY

#### A. This Action was Brought Within the DCL's 6-Year Limitations Period

King Center has brought this adversary proceeding under 11 U.S.C.A. § 544, which authorizes a Trustee to void transfers of property of the debtor pursuant to applicable state law. Using the federal authority of Section 544, King Center has brought claims that refer back to New York's DCL §§ 273 and 274.

There is no dispute that claims brought under these provisions are governed by CPLR §213(8), which permits claims commenced within six years from the date the cause of action arose. *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 169 (W.D.N.Y. 2003) (applying CPLR 213(8)'s six-year period to claims under the DCL). The

3

statute of limitations period is measured from the date of the occurrence of the allegedly fraudulent conveyance. *Id.*

King Center's claims arose on October 22, 2010, the date Middletown executed a quitclaim from itself to itself and thereby conveyed title over the Property to itself. On September 18, 2015, well within the six-year limitations period applicable to the DCL, King Center commenced this action. King Center's Complaint, grounded in the DCL, is clearly timely under CPLR § 213(8).

The Court should also keep in mind that 11 U.S.C. §546(a) also authorizes the Trustee to proceed under Section 544.

> An action or proceeding under section 544 . . . of this title may not be commenced after the earlier of (1) the later of (A) 2 years after the entry of the order for relief . . . , or (B) 1 year after the appointment or election of the first trustee; or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). This action was filed only days after King Center filed its Petition, well in advance of the two-year period authorized in Section 546(a). It is timely.

### B.  Article V, Section 105 of the City Charter Does Not Bar This Action

In a spectacular attempt at gotcha litigation, Middletown claims that Article V, Section 105 of its City Charter bars this action, notwithstanding that it is plainly timely under the DCL and Section 546(a) of the Bankruptcy Code. A review of that provision itself – so arcane that we have found no decisions interpreting it – disproves Middetown's argument.

The City Charter provision provides as follows:

> Every *tax deed* executed, and delivered by the City of Middletown pursuant to any general or special law providing for the foreclosure of a tax lien by action in rem, shall be presumptive evidence that the action and all proceedings therein and all proceedings prior thereto from and including the assessment of the lands affected and all notices required by law were regular and in accordance with all provisions of law relating thereto. After two years from the date of the recording of such deed the presumption shall be conclusive . . . *No action to set aside such deed* may be maintained unless the action is commenced . . . prior to the time that the presumption becomes conclusive.

4

Middletown City Charter Art. 5 § 105 (emphasis added). The two-year limitations period on its face, only applies to actions "to set aside" a tax deed.[1] King Center seeks far more than merely this relief; as cited above, King Center asks the Court to avoid the fraudulent conveyance or in the alternative to award it the value of the Property. The City Charter provision does not apply to actions seeking a monetary award.

In the absence of any reported authority arising out of Article V, Section 105, we reviewed other New York state and municipal statutes that contain similar procedural presumptions. Our research reveals that such statutes are generally only used to bar claims of a procedural nature. *See, e.g., Matter of Tax Foreclosure No. 35*, 71 N.Y.2d 863, 865 (1988) (allegation involving lack of notice); *In rem Tax Foreclosure Action No. 44*, 23 A.D.3d 290, 291 (1st Dep't 2005) (same); *149-155 Swan St. Corp. v. City of Buffalo*, 206 Misc. 372, 374 (Sup. Ct. 1954) (allegation that notices and descriptions did not conform to applicable rules).

We have found no precedent that even remotely authorizes a local ordinance such as Section 5 to bar a fraud claim, let alone a fraudulent conveyance claim that arises under federal and state law. Where, as here, King Center challenges not the procedure by which Middletown conveyed itself the Property (questionable though it may be), but rather whether the conveyance was accompanied by "fair consideration," the claim falls outside the narrow ambit of the City Charter limitations period.

## II.  THE COMPLAINT PROPERLY PLEADS A FRAUDULENT CONVEYANCE CLAIM

New York's DCL § 273 broadly allows a Court to avoid as fraudulent, "every conveyance made . . . by a person who is or will be thereby rendered insolvent . . . without regard to his actual intent if the conveyance is made . . . without a fair consideration." Similarly, DCL § 274 allows a Court to avoid as fraudulent "[e]very conveyance made without fair

---

[1] The deed at issue here is styled a "quitclaim" deed. King Street does not know whether this deed constitutes a "tax deed" under the Middletown City Charter, but if it should not, that would provide another reason for the Charter provision not to apply here.

consideration when the person making it is engaged . . . in a business transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital . . . without regard to actual intent." The term "conveyance" is broadly defined in the DCL to include "every . . . transfer." DCL § 270. Thus, under the DCL, all that is needed to demonstrate that a conveyance is constructively fraudulent is the lack of "fair consideration and one of the following conditions [must be] met: "(i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; [or] (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274 . . ." *In re Sharp Int'l Corp.*, 403 F.3d 43, 53-54 (2d Cir. 2005); *Thaler v. Korn*, No. 13-CV-3768(SJF), 2014 WL 1154059, at *4 (E.D.N.Y. Mar. 19, 2014).

To establish fair consideration, good faith must be shown, the recipient of the debtor's property must discharge an antecedent debt, and the property that is subject to the exchange must be a fair equivalent of the antecedent debt. *See In re Sharp Int'l Corp.*, 403 F.3d at 54 (only good faith was at issue because the plaintiff had "acknowledge[ed] that the payment at issue discharged an antecedent debt and was made for a fair equivalent. . . ").[2]

The Complaint alleges in paragraph 32 that when the Property was transferred to Middletown in exchange for the satisfaction of the $31,000 tax lien, King Center did not receive "fair consideration." Instead, Middletown prepared a deed conveying to itself the Property, which had been valued at approximately $1 million, to satisfy a mere $31,730.28 debt, which thereby rendered King Center insolvent and left it unable to satisfy the unrecorded mortgage it gave to creditor David Pfeifer. These allegations are sufficient to maintain a claim under the DCL.

---

[2] Middletown argues, puzzlingly and at length, that King Center is seeking to apply a "shocks the conscience" standard to void the forced conveyance of the Property. (Mem. of Law in Supp. of Mot. to Dismiss at 7-9). We make no such argument. King Center's position is that the DCL's "fair consideration" and "unreasonably small capital" standards apply and that those standards have been satisfied here.

Middletown responds that the DCL applies only to "voluntary conveyances made by a debtor" and not to a tax foreclosure where Middletown was both conveyancer and recipient of the Property. (Mem. in Supp. of Mot. to Dismiss at 3, 9-17). This argument flies in the face of the DCL's broad definition of "conveyance." DCL § 270. ("Conveyance" means "every . . . transfer")[3] and decades-old authority.

DCL §§ 273 and 274 have no intent requirement, as such, the City's emphasis on the voluntariness of the conveyance is misplaced. Indeed, other sections of the DCL not applicable here expressly apply only to "voluntary transfers." *See, e.g.*, DCL § 15 (referring to the "voluntary transfer" of rights by assignment). If the Legislature had intended DCL §§ 273 and 274 to apply only to voluntary transfers it could easily have said so, but did not. Thus, "[t]he allegation of insolvency occasioned by the conveyance is all that is required under section 273, regardless of the actual intent of the debtor." *Doukas v. George*, 12 Misc. 2d 958, 961 (Sup. Ct. Kings County 1958) (rejecting argument that DCL §273 did not apply because a conveyance was not voluntary or fraudulent).

Courts agree that the term "conveyance" applies to involuntary transfers such as foreclosure sales, as the cases Middletown itself cites make clear. *Lefkowitz v. Finkelstein Trading Corp.*, 14 F.Supp. 898, 899 (S.D.N.Y. 1936) (involving a Sheriff's sale authorized, unlike here, by the Courts and holding "[a] transfer effected on execution sale may be as fraudulent on creditors as a transfer made by the debtor's own volition where the effect is to hinder, delay and defraud creditors."); *see also Langan v. First Trust & Deposit Co.*, 101 N.Y.S.2d 36 (4th Dep't 1950), *aff'd*, 302 N.Y. 932 (1951) (involving the entry of judgment against a bank in a foreclosure sale, because the market value of the property was well in excess of the price paid by the bank); *Hearn 45 St. Corp. v. Jano*, 283 N.Y. 139, 143-45 (1940)

---

[3] Middletown supports this argument by pointing to the title of each statute, but it is well-established that the character of a statute is to be determined by its provisions, not by its title. *People v. O'Brien*, 111 N.Y. 1, 59-60 (1888); *People v Gayton*, 23 Misc. 3d 1117, at *1 (Sup Ct 2008) ("There can be no dispute that the object of a statute is to be determined by its provisions, and not merely by its title…") (citation omitted).

(involving a sale pursuant to an execution of judgment and a foreclosure sale); Comment to § 1, Uniform Fraudulent Transfer Act, 7A Uniform Laws Annot. 647 (1985) ("While the definition in the [UFCA] did not explicitly refer to an involuntary transfer, the decisions under that Act were generally consistent with an interpretation that covered such a transfer"). In each of these forced conveyances, the judgment debtor herself undoubtedly did not sign the transfer papers. An officer of the Courts, like a Sheriff, instead was empowered to do so, yet the transfer was still subject to DCL fraudulent conveyance scrutiny. If a Court-authorized involuntary conveyance can be subject to a fraudulent conveyance claim, it must necessarily be true that King Center can challenge an involuntary conveyance nominally made by Middletown but effectively made by – and certainly on behalf of – the owner of the Property, King Center.[4]

Middletown seeks to pre-emptively distinguish its own authorities by arguing that since all of them involved an element of collusion, only collusive involuntary transfers are subject to the DCL. (Mem. of Law in Supp. of Mot. To Dismiss at 14-16). None of those cases say this.

However the transaction is couched, there should be no question that Middletown did not own the Property at the time of the conveyance and, in the absence of a court order authorizing its actions, its owner – King Center – was necessarily the conveyancer of the Property even if not named on the deed instrument.[5] The Court should keep in mind that the ostensible consideration

---

[4] Middletown's lengthy disquisition about the differences between the Uniform Fraudulent Conveyances Act, which New York employs, and the Uniform Fraudulent Transfers Act, which the majority of the states have adopted, is to very little effect. The UFTA provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made…if the debtor made the transfer without obtaining a reasonably equivalent value or the debtor became insolvent." (Mem. of Law in Supp. of Mot. To Dismiss at 12) (quoting UFTA). Employing similar language, the New York's UFCA-based DCL refers to conveyances made "by a person" who will be rendered insolvent. DCL § 273. Given the City's admission that the UFTA "has been construed to permit the avoidance of non-collusive involuntary transfers," it is illogical to assume that the similar UFCA would lead to a different result. (*Id.*)

[5] Middletown's own notice letter, quoted in the Complaint at ¶16 recognizes this clearly; Middletown's letter advised King Center that "if those unpaid taxes, assessments are not paid, then [Middletown] will convey **your ownership** of [the Property] to the City…" (emphasis added).

8

for this transfer – the extinguishment of the tax liens – flowed to King Center, not to the reported conveyancer, Middletown. In that light, the Court should interpret the Middletown-to-Middletown nature of the conveyance as a fiction whose form the Court need not exalt. Whether labeled as a constructive transferor, an effective transferor, a deemed transferor or by any other label, the Property was King Center's to transfer and, for DCL purposes, this involuntary transfer is properly the subject of a claim. Though its name does not appear in the body of the deed, King Center was plainly not a stranger to the conveyance.[6]

Like Middletown, we have found no reported decision under DCL §§ 273 or 274 in relation to a municipality's *quasi in-rem* tax foreclosure procedures. But the clearly emerging trend applies fraudulent conveyance principles, when raised under Section 548 of the Bankruptcy Code, to transactions similar or identical to this. Section 548 is a fraudulent conveyance statute that, though not identical, is similar in many respects to Section 544. Like the DCL provisions at issue here and Section 544, Section 548 allows for the avoidance of any conveyance made by a debtor if such transfer was made for "less than a reasonably equivalent value" and the debtor became insolvent as a result of such transfer. 11 U.S.C. §548(a)(l)(B).

The principles underlying both the Bankruptcy Code and the DCL are identical: both intend to void unfair transfers when they serve to render a debtor insolvent and deprive other creditors of a level playing field. Under both the Bankruptcy Code and the DCL, the intent of the debtor is irrelevant. *Cnty. of Clinton v. Warehouse at Van Buren St., Inc.*, 496 B.R. 278, 282 (Bankr. N.D.N.Y. 2013); DCL §§ 273 and 274. The Bankruptcy Code and the DCL also similarly apply across the board to any "transfer" (11 U.S.C. § 101(54)) or "every . . . transfer" (DCL § 270). Whether the Court is to employ the Bankruptcy Code's formulation for avoiding conveyances made for "less than a reasonably equivalent value" or the DCL's proscription of conveyances made "without a fair consideration" the yawning disparity between the value of the Property and the value of Middletown's tax lien would lead to the same result here.

---

[6] Indeed, it was King Center's failure to pay its taxes currently that caused the tax foreclosure.

The strong emerging trend under the Bankruptcy Code has been to avoid as fraudulent involuntary *quasi in-rem* tax foreclosures where the value of the forcibly conveyed property far exceeds the amount of the debt being discharged. *See, e.g.*, *In re Canandaigua Land Dev., LLC*, 521 B.R. 457, 477 (Bankr. W.D.N.Y. 2014) (avoiding as fraudulent the tax foreclosure of a property valued at no less than $300,000 where the delinquent taxes were a mere $16,594.99); *Clinton Cnty. Treasurer v. Wolinsky*, 511 B.R. 34, 39 (Bankr. N.D.N.Y. 2014) (concluding that a tax foreclosure on a $42,000 property as a result of $2,406.45 in delinquent taxes could be avoided as fraudulent); *Cnty. of Clinton.,* 496 B.R. at 282-283 (finding that an involuntary transfer was fraudulent where a local authority seized a $120,000 property to satisfy a $29,000 tax lien); *In re Herkimer Forest Products Corp.,* No. 04-Bk.-13978 (Adversary Pro. No. 04-90148), 2005 WL 6237559 at *3-4 (Bankr. N.D.N.Y. July 26, 2005) (a tax debt of $24,000 was not "proportional" to the approximately $270,000 value of the property seized and transfer was voidable as a fraudulent transfer under the Bankruptcy Code). We are unaware of any decision from the Eastern District of New York discussing these principles. King Center's tax lien constitutes a far smaller proportion of the value of the Property than any of these authorities.

The rationale for this trend is that "[w]here property is seized without a sale or competitive bidding, there cannot be a presumption as a matter of law that reasonably equivalent value was received because market forces were completely absent." *In re Murphy,* 331 B.R. 107, 119-21 (Bankr. S.D.N.Y. 2005). As a result, a plaintiff can "state[] a claim that reasonably equivalent value was not obtained for a property seized by tax forfeiture where the state's procedure for tax forfeiture does not provide for a public sale with competitive bidding." *Id.; see also In re Harris,* No. 01-Bk.-10365, 2003 WL 25795591 at *5 (Bankr. N.D.N.Y. March 11, 2003) (where the local authority transfers the property in question to itself, with no requirement of public sale, the authority is *not* entitled to a presumption that the transfer was for fair value under the Bankruptcy Code).

In all of these decisions, we see Courts increasingly recognizing the unfairness in allowing the government to obtain a massive windfall when a tax lien is a mere fraction of the

price of the property seized. The same rationale ought clearly to apply if the "fair consideration" standard is applied. There is no principled argument to be made that extinguishment of a $31,000 tax lien is "fair consideration" for the conveyance of a $1 million Property, let alone a conveyance that rendered King Center insolvent and made it impossible to satisfy its mortgage obligations to its lender, David Pfeifer.

## CONCLUSION[7]

For the foregoing reasons, Middletown's motion to dismiss should be denied in its entirety.[8]

Dated: New York, New York
January 8, 2016

                                               Respectfully submitted,

                                               ZUKERMAN GORE BRANDEIS
                                               &amp; CROSSMAN, LLP

                                               By: _____
                                                   Ted Poretz
                                                   Jesenia Ruiz de la Torre
                                               Eleven Times Square
                                               New York, New York 10036
                                               (212) 223-6700
                                               *Attorneys for Plaintiff*

---

[7] Middletown advises that it plans to file a Fed R. Civ. Pro. 56 motion for summary judgment raising issues of privity and collateral estoppel if its instant motion should be denied. (Mem. of Law in Supp. of Mot. to Dismiss at 4-5). These issues are not before the Court and King Center will not presume to argue their lack of merit here. Just as Middletown does, King Center reserves all of its arguments for a later time.

[8] In the event the Court should grant this motion, King Center respectfully seeks leave to re-plead. King Center believes that under the circumstances prevailing, certain common law claims, such as for unjust enrichment, may lie as against Middletown.