UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

In re                                                     Chapter 11

KING CENTER CORP., an unincorporated         Case No. 15-44165-ess
company/business association,

                   Debtor.
-----------------------------------------------------------------------x
KING CENTER CORP., an unincorporated
company/business association,


                   Plaintiff,                      Adv. Pro. No. 15-01167-ess

      -against-


CITY OF MIDDLETOWN,

                   Defendant.
-----------------------------------------------------------------------x

## MEMORANDUM DECISION ON THE CITY OF MIDDLETOWN'S
## MOTION TO DISMISS THE COMPLAINT

Appearances:

Ted Poretz, Esq.
Zuckerman Gore Brandeis & Crossman, LLP
11 Times Square (15th Floor)
New York, NY 10036

Howard J. Berman, Esq.
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas
New York, NY 10105
   *Attorneys for King Center Corp., an*
   *unincorporated company/business*
   *association*

Michael D. Pinsky, Esq.
Hayward, Parker, O'Leary & Pinsky
225 Dolson Avenue
Suite 303
P.O. Box 929
Middletown, NY 10940
   *Attorneys for the City of Middletown*

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

## Introduction

Before the Court is the City of Middletown's Motion to Dismiss King Center Corp.'s

Complaint seeking to undo Middletown's transfer to itself of a four-story mixed-use building

located at 11-15 King Street (the "Property") in downtown Middletown, New York, and to

recover the Property or its value.  The transfer was made in order to satisfy several tax liens for

outstanding school and city taxes and water and sewer charges, and it is undisputed that the value

of the Property significantly exceeds the aggregate amount of the sums that were due.  The

transfer occurred pursuant to an *in rem* tax lien foreclosure procedure that is set forth in

Middletown's Charter.  In its Motion to Dismiss, Middletown argues that King Center cannot

succeed because its claims are time-barred under the Charter, and because King Center has not

pleaded facts sufficient to state a plausible claim to recover the Property as a constructively

fraudulent conveyance.

The matters to be decided on this Motion to Dismiss are whether, on the face of the

Complaint, King Center's claims to recover the Property or its value are time-barred by

Middletown's Charter; and alternatively, if they are timely, whether King Center's claims cannot

succeed because they do not allege a plausible basis to conclude that King Center, as opposed to

Middletown, made the transfer at issue.

## Jurisdiction

King Center's claims arise under Bankruptcy Code Sections 544 and 550 and New York

Debtor and Creditor Law Sections 273 and 274, and are core matters pursuant to 28 U.S.C.

§§ 157(b)(1), 157(b)(2)(A), and 157(b)(2)(H).  And as core matters, this Court has constitutional

authority to enter a final judgment because King Center's claims stem "from the bankruptcy

itself." *Stern v. Marshall*, 564 U.S. 462, 499 (2011).  To the extent that these claims may not be core matters, King Center and Middletown have stated their consent to an entry of a final judgment by this Court.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding.").  For these reasons, this Court has jurisdiction to consider and enter judgment on these claims under 28 U.S.C. § 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

## Background

### *This Bankruptcy Case*

On September 10, 2015, King Center Corp., an unincorporated entity with a principal place of business in Brooklyn, New York, filed a petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").  King Center continues as a debtor-in-possession under Bankruptcy Code Sections 1107(a) and 1108.

### *This Adversary Proceeding*

On September 18, 2015, King Center commenced this adversary proceeding by filing a complaint against Middletown, a New York State municipal corporation located in Orange County.  King Center asserts a single cause of action against Middletown.  King Center seeks to avoid the conveyance (the "Conveyance") of the Property, and recover the Property or its value, as a fraudulent conveyance under Bankruptcy Code Sections 544 and 550 and New York Debtor and Creditor Law ("NY DCL") Sections 273 and 274, on grounds that the Conveyance was not in exchange for fair consideration, and rendered King Center insolvent and with unreasonably small capital.  Some seven months later, this Court referred the parties to mediation, and by order

dated April 22, 2016, the parties jointly accepted Chief Judge Cecelia G. Morris of the United States Bankruptcy Court for the Southern District of New York as the mediator.  The parties were unable to resolve their dispute through mediation, and the adversary proceeding went forward.

### The State Court Litigation

This is not the first time that the circumstances surrounding the transfer of the Property have been the subject of litigation.  Middletown argues that in 2011, some four years prior to the Petition Date, 11 King Center Corp. commenced an action in New York Supreme Court, Orange County, seeking to recover an allegedly fraudulent conveyance of the Property, and a declaratory judgment that it was the owner of the Property and entitled to redeem the Property or to reform the title of the deed.  By order dated March 16, 2012, the Supreme Court dismissed 11 King Center Corp.'s complaint, and noted that it was "uncontroverted that the deed was improperly recorded and never corrected."  *11 King Center Corp. v. City of Middletown*, 2012 WL 10996625, at *2 (N.Y. Sup. Ct. Orange Co. Mar. 16, 2012).  The Supreme Court concluded that the owner of record of the Property was King Center Corp., not 11 King Center Corp., and that the record in the case showed that with respect to notice of the tax delinquency and the pendency of the tax sale proceedings, "the owner of record received the requisite notice for due process purposes."  *11 King Center Corp.*, 2012 WL 10996625, at *6.

11 King Center Corp. appealed the dismissal to the Appellate Division of New York Supreme Court, and that court affirmed, as modified, the Supreme Court's ruling finding, among other things, that 11 King Center Corp. was not entitled to declaratory relief because the entity "did not exist at the time the deed allegedly intended to convey title to it was executed," and that appropriate notice was given to the owner of record.  *11 King Center Corp. v. City of*

*Middletown*, 115 A.D.3d 785, 787 (N.Y. App. Div. 2d Dep't 2014).  11 King Center Corp.

appealed this judgment to the New York Court of Appeals, and that court denied leave to appeal

without opinion.  *11 King Ctr. Corp. v. City of Middletown*, 24 N.Y.3d 905 (2014).

<u>The Allegations of the Complaint – Background</u>

King Center alleges that on November 19, 2001, it acquired the Property for $600,000.

At the time of the acquisition, King Center did business under the name "11 King Center Corp.,"

because it discovered on the day of the closing that the name "King Center Corp." was

unavailable.  Compl. ¶ 12, ECF No. 1.

King Center also alleges that it gave a mortgage on the Property, dated June 1, 2009, to

David Pfeifer in exchange for a loan in the amount of $500,000, and that the "mortgage was not

recorded but remains a valid unsecured obligation" of King Center.  Compl. ¶ 14.  The

Complaint states that as of September 1, 2015, King Center owed $433,260.28 to Mr. Pfeifer.

The Complaint states that by letter dated September 10, 2009 (the "September 2009

Letter"), Middletown advised King Center of a "delinquent tax, water and/or miscellaneous lien"

on the Property, which Middletown proposed to sell to a third party.[1]  Compl. ¶ 15.

Middletown's letter also stated that "in accordance with its municipal charter, [King Center] had

two years from [October 30, 2009,] to redeem the property:  that is paying the tax lien in full."

*Id*.

The Complaint further states that by letter dated March 5, 2010 (the "March 2010

Letter"), Middletown again advised King Center of the liens against the Property, and

---

[1]  King Center quotes from the September 2009, March 2010, and May 2010 letters but does not attach them to the Complaint.

Middletown's intent to convey King Center's ownership of the Property to itself on or after July 1, 2010, if the liens remained unpaid.  Compl. ¶ 16.

And the Complaint states that by letter dated May 28, 2010 (the "May 2010 Letter"), Middletown advised King Center, "for the first time, that school and city taxes and water and sewer rents 'from 2009' exist against the Premises in the aggregate amount of $37,617.55, that on July 1, 2010, these liens 'will be delinquent for two years,' and that '[p]ursuant to the Charter,' Middletown 'is about to give a deed to the property . . . to the City of Middletown.'" Compl. ¶ 17.  The Complaint also states that the May 2010 Letter further stated that if full payment was made "'on or before July 30, 2010, then the conveyance will not be made.'" *Id.*

King Center alleges that the three letters sent by Middletown "were obviously inconsistent" and that King Center's "principal at the time, Abraham Mendlowitz . . . justifiably relied on the [September 2009] letter, which clearly apprised [King Center] that it must pay all delinquent liens by October 30, 2011 in order to avoid the loss of the Premises through tax foreclosure."  Compl. ¶ 18.  And King Center alleges that there was a change in the applicable law:

> Unknown to [King Center] or Mendlowitz (who did not reside or work in Middletown), Middletown amended its Charter by enacting Local Law One of 2008, which 'create[d] a new process for properties in [Middletown] that were delinquent on taxes or assessments.  Local Law One of 2008 'took effect with taxes, liens and assessments carrying a lien date starting June 30, 2008,' whereas, according to Middletown's Corporation Counsel, Richard J. Guertin, Esq., the [September 2009 Letter] 'covered liens in effect prior to the effective date' of Local Law One of 2008.  As a result, though [King Center] received no notice of the change in Charter provisions, and none of the letters from Middletown to [King Center] disclosed a change, Middletown asserted that the July 1, 2010 and July 30, 2010 deadlines contained in the [March 2010] and [May 2010] letters applied to entirely different liens than the [September 2009] letter, and that these deadlines in effect superseded the October 30, 2011 deadline contained in the first correspondence from Middletown to [King Center].

[King Center] did not know this, and neither of the [March 2010] or [May 2010] letters disclosed the fact that the October 30, [2011] deadline had in effect become meaningless.

Compl. ¶¶ 19-20.

The Complaint states that in "late 2010," Mr. Mendlowitz went to Middletown's offices "prepared to redeem the Premises from foreclosure by paying the liens, [that] he was advised that Middletown had already conveyed the Property to itself by the October 22, 2010 quitclaim deed" (the "Tax Deed"), and that Middletown now held title to the Property. Compl. ¶ 21. The Complaint further states:

Middletown did this entirely on its own; it filed no foreclosure suit, did not conduct a public auction and Middletown's self-dealing quitclaim was not supervised in any way by the courts. Attempts to persuade Middletown to accept full payment of the delinquent liens – which, with the prior liens are understood to total approximately $47,000 – failed.

*Id*.

*The Allegations of the Complaint – King Center's Claims for Relief*

King Center asserts one count to avoid the Conveyance and recover the Property or its value on several grounds, pursuant to Bankruptcy Code Sections 544 and 550, and New York Debtor and Creditor Law Sections 273 and 274. King Center alleges that at the time of the Conveyance, "and for years before," the Property was valued at approximately $1 million, and that Middletown's assessor determined the "full Market Value" of the Property for the 2009 tax year to be $922,034, and for the 2008 tax year to be $971,429. Compl. ¶¶ 24-25. And King Center alleges that Middletown's records show similar values, ranging from $877,419 to $1,133,333, for the tax years from 2005 to 2007. Middletown prepared and filed a Real Property Transfer Report in connection with the Conveyance of the Property on October 22, 2010, which reflects a "full Market Value" certified by Middletown's mayor of $922,034. Compl. ¶¶ 27-29.

King Center alleges that Bankruptcy Code Section 544(b) permits a debtor to avoid any transfer of an interest of the debtor in property "'that is voidable under applicable law by a creditor holding an unsecured claim.'" Compl. ¶ 30 (quoting 11 U.S.C. § 544(b)). And King Center alleges that on the date of the Conveyance, Mr. Pfeifer was an actual unsecured creditor holding a claim in the amount of not less than $500,000, that Middletown's seizure and Conveyance of the Property to itself was made without fair consideration, and that the Conveyance "rendered [King Center] insolvent and with unreasonably small capital." Compl. ¶ 33.

King Center also alleges that by conveying the Property to itself, Middletown "obtained . . . an unfair windfall," and that under the Bankruptcy Code and New York Debtor and Creditor Law, the Conveyance should be avoided, and the Property or its value returned to it. Compl. ¶ 34. King Center seeks an award of interest, costs, and attorneys' fees.

*This Motion to Dismiss*

By this motion, Middletown seeks the dismissal of this adversary proceeding on two principal grounds. First, Middletown argues that King Center's claims are time-barred as a matter of law under the two-year limitations period set forth in Charter Section 105. Middletown also argues that no authority exists to avoid a tax sale based on the disparity between the amount of taxes owed and the value of the property conveyed.[2] And second, Middletown argues that NY

---

[2] According to Middletown, although some New York courts may apply a "shocks the conscience" test to avoid a mortgage foreclosure sale under New York law, this test "does not apply to New York tax sales." Mot. to Dismiss 7, ECF. No. 7. This difference reflects the state's "vital public policy interest in assuring the collection of taxes which the state has determined outweighs concerns of unfairness in connection with tax sales." *Id.* And as noted below, King Center urges this Court to follow those cases "recognizing the unfairness in allowing the government to obtain a massive windfall when a tax lien is a mere fraction" of the value of the property that is seized. Opp. Mem. at 10-11, ECF No. 12. This Court concludes that it is not necessary to address this argument in the context of this Motion to Dismiss.

DCL Sections 273 and 274 apply only to voluntary conveyances made by a debtor, and not, as

King Center argues, to non-collusive involuntary conveyances made by others, as occurred here.[3]

 Middletown argues that Section 105 of the Middletown Charter ("Charter Section 105")

serves both as a "curative" provision for property owners seeking to challenge an *in rem* tax

foreclosure, and as a two-year statute of limitations that bars any claim to undo a transfer after

two years, including the claims here.  Mot. to Dismiss ¶ 11, ECF No. 7.  Charter Section 105

provides that a tax deed executed by Middletown constitutes "presumptive evidence that the

action and all proceedings therein and all proceedings prior thereto . . . were regular and in

accordance with all provisions of law relating thereto."  Middletown Charter, Title V, Section

105.  It further provides that "[a]fter two years from the date of the recording of such deed the

presumption shall be conclusive," and that "[n]o action to set aside such deed may be maintained

unless the action is commenced and a note of pendency of the action [is] filed in the office of the

Orange County Clerk" before the two-year period expires.  *Id.*

 Middletown argues that King Center did not bring this action within two years of the

Conveyance, as Charter Section 105 requires, and that its claims are therefore untimely and

barred.  Middletown asserts that the residual six-year statute of limitations set forth in Section

213 of New York's Civil Practice Law and Rules does not apply to this action because it "only

---

[3] Middletown also argues that the doctrine of collateral estoppel bars King Center from litigating
the issues in the Complaint, because a party in privity with King Center has already fully
litigated these claims in New York State court.  Middletown acknowledges that "full
consideration of the collateral estoppel issues presented by the prior state court litigation would
require submission of matters outside of the pleadings" and reserves those matters for a future
motion for summary judgment, should this Motion to Dismiss not be granted.  Mot. to Dismiss
¶ 9.

applies to claims not subject to another limitations provision," and here, Charter Section 105 sets forth the limitations period.  Reply at 4, ECF No. 14.

Separately, with respect to King Center's fraudulent conveyance claims, Middletown argues that the statutory language in NY DCL Sections 273 and 274 does not apply to the Conveyance because Middletown did not name King Center as the transferor on the Conveyance. Middletown argues that the text of NY DCL Section 273, which refers to conveyances "made . . . *by a person who is or will be insolvent*," shows that the provision applies *only* to conveyances made by a debtor.  Mot. to Dismiss ¶ 31.  Middletown also argues that the text of NY DCL Section 274, which refers to "[e]very conveyance made . . . when the person making it is engaged or is about to engage in a . . . transaction for which the property remaining . . . after the conveyance is an unreasonably small capital," shows that the provision applies only to conveyances that a debtor itself made.  Mot. to Dismiss ¶ 8.  And Middletown asserts that the definition of "conveyance," as set forth in NY DCL Section 270, does not include "involuntary" conveyances.  Mot. to Dismiss ¶ 28.  For all of these reasons, Middletown urges that NY DCL Sections 273 and 274 apply only to voluntary conveyances by a debtor, not conveyances by another entity or involuntary conveyances such as the conveyance at issue here.

King Center opposes the Motion to Dismiss.  King Center responds that the two-year statute of limitations set forth in Charter Section 105 does not apply to its claims here because the relief that it seeks – to avoid the Conveyance as constructively fraudulent and to recover the Property or its value – is distinct from an action to "set aside" a tax deed.  Opp. Mem. at 4-5, ECF No. 12.  King Center contends that Middletown overstates the scope of Charter Section 105, and that there is "no precedent [for] a local ordinance such as [Charter] Section 105 to bar . . . a fraudulent conveyance claim that arises under federal and state law."  Opp. Mem. at 5.

9

King Center states that it does not "challenge the procedure by which Middletown conveyed itself the property . . . but rather whether the conveyance was accompanied by 'fair consideration,'" which claim has a longer limitations period than the two-year bar imposed by Charter Section 105. *Id*. King Center argues that when Middletown received the Property, valued at nearly $1,000,000, in satisfaction of a $37,617.28 tax deficiency, it did not provide "fair consideration" because the Tax Debt amounted to approximately four percent of the Property's value – and that this resulted in a significant windfall for Middletown.  Opp. Mem. at 6-7.

King Center disputes Middletown's assertion that New York's Debtor and Creditor Law applies only to "voluntary conveyances made by a debtor," and notes that the plain language of NY DCL Section 270 states that "'[c]onveyance' means 'every . . . transfer.'"  Opp. Mem. at 7. And King Center argues that if a court-authorized involuntary transfer such as a foreclosure can be the subject of a fraudulent conveyance claim under NY DCL Sections 273 and 274, then the Conveyance, made without court authorization, can also be the subject of such claims.  These allegations, King Center argues, are sufficient to state a plausible constructive fraudulent conveyance claim.

With respect to Middletown's argument that King Center, as an unnamed party to the Conveyance, cannot bring a fraudulent conveyance claim, King Center responds that the Court should consider the substance, not the form, of the transaction:

> However the transaction is couched, there should be no question that Middletown did not own the Property at the time of the conveyance and, in the absence of a court order authorizing its actions, its owner – King Center – was necessarily the conveyancer of the Property even if not named on the deed instrument. . . . the Court should interpret the Middletown-to-Middletown nature of the conveyance as a fiction whose form the Court need not exalt.  Whether labeled as a constructive transferor, an effective transferor, a deemed transferor or by any other label, the Property was King Center's to transfer . . . . Though its name does

not appear in the body of the deed, King Center was plainly not a stranger to the
conveyance.

Opp. Mem. at 8-9 (footnotes omitted).  King Center also observes that it received consideration

in the form of tax lien extinguishment.

In addition, King Center argues that there is a "strong emerging trend" reflected in

several decisions by district and bankruptcy courts in the Second Circuit of applying Bankruptcy

Code Section 548 to avoid as constructively fraudulent *in rem* tax lien foreclosures of properties

where the property value is significantly in excess of the tax liens, and urges the Court to extend

that rationale in applying Bankruptcy Code Section 544 to the Conveyance.  Opp. Mem. at 10-

11.

In particular, King Center points to several cases from the Western and Northern Districts

of New York where courts have addressed the presumption recognized by the Supreme Court in

*BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), that for purposes of Bankruptcy Code

Section 548, the "reasonably equivalent value" of a property sold at foreclosure is "the price in

fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law

have been complied with," and have declined to apply that presumption to an *in rem* tax

proceeding.  *BFP*, 511 U.S. at 545.  King Center argues that the decisions of those courts

demonstrate that there is a "strong emerging trend under the Bankruptcy Code . . . to avoid as

fraudulent involuntary quasi in-rem tax foreclosures where the value of the forcibly conveyed

property far exceeds the amount of the debt," and that this Court should follow the same path.

Opp. Mem. at 10.

For example, King Center notes, in *Canandaigua Land Development, LLC v. County of

Ontario (In re Canandaigua Land Development, LLC)*, 521 B.R. 457 (Bankr. W.D.N.Y. 2014),

the bankruptcy court avoided as fraudulent the tax foreclosure of a property valued at not less

than $300,000 where the delinquent taxes were $16,594.99. And in *Clinton County Treasurer v. Wolinsky*, 511 B.R. 34 (N.D.N.Y. 2014), King Center notes that the court found that a tax foreclosure on a $42,000 property as a result of $2,406.45 in delinquent taxes could be avoided as fraudulent. Similarly, King Center cites *County of Clinton v. Warehouse at Van Buren Street, Inc.*, 496 B.R. 278 (N.D.N.Y. 2013), where the district court affirmed the bankruptcy court's determination that a debtor could avoid a tax lien foreclosure based on the significant disparity between the value of the property and the amount of the tax lien. And King Center points to *Herkimer Forest Products Corp. v. County of Clinton* (*In re Herkimer Forest Prods. Corp.*), 2005 WL 6237559, at *4 (Bankr. N.D.N.Y. July 26, 2005), and notes that the bankruptcy court observed that a tax debt of $24,000 was not "proportional" to the approximately $270,000 value of the property seized, and concluded that the transfer was avoidable as a fraudulent transfer under the Bankruptcy Code.

King Center asserts that these cases represent a developing "recogni[tion of] the unfairness in allowing the government to obtain a massive windfall when a tax lien is a mere fraction of the price of the property seized," and urges this Court to apply the same rationale here, under Bankruptcy Code Section 544, to permit the avoidance of the conveyance of the Property pursuant to the *in rem* tax lien as constructively fraudulent because its value was substantially in excess of the liens. Opp. Mem. at 10-11.

Middletown replies that King Center has not shown that its claims should be sustained as plausible in the face of its Motion to Dismiss. Middletown describes King Center's injuries as "self-inflicted, [and] the result of two egregious errors in judgment by the Debtor prepetition." Reply at 1. The first such error, Middletown states, was King Center's "inexplicable failure to substitute itself, 'King Center Corp.' for its alter ego '11 King Center Corp.' in the timely-filed

state court action seeking to avoid the tax deed, once Middletown had filed papers showing that the wrong party . . . was mistakenly named as the plaintiff.  There was time to fix the error." Reply at 1-2.  And the second error was that King Center "failed to commence a bankruptcy case within 2 years of the date of the tax deed.  By failing to commence its chapter 11 case within 2 years, [King Center] lost the ability to invoke Bankruptcy Code section 548(a) *and* permitted the 2 year statute of limitations in charter section 105 to come into play."  Reply at 2.

In addition, Middletown asserts that its tax collection procedures are authorized by New York law, under a "grant of power in the New York State Constitution."  *Id*.  And Middletown contends that Charter Section 105 sets the applicable and definitive limitations period here, and that period is two years, so that this action – no matter how meritorious – is simply barred by the statute of limitations.  And even if it was not, Middletown argues that New York's Debtor and Creditor Law does not apply to non-collusive involuntary conveyances, so that to apply it here would be "entirely inconsistent with the way state courts have applied [these Sections] for the last 91 years" and "fundamentally at odds with longstanding New York State public policy" respecting the collection of delinquent taxes.  Reply at 9.

On January 4, 2017, the Court held a hearing and heard arguments on Middletown's Motion to Dismiss, at which the parties, by counsel, appeared and were heard, and the Court closed the record.  On July 7, 2017, the Court held a conference at which the parties, by counsel, appeared and were heard, the parties indicated their consent to the entry of a final judgment by this Court, and the Court reserved decision.

### The Applicable Legal Standards

This Motion to Dismiss calls for the Court to consider the pleading requirements established by Federal Rules of Civil Procedure 8(a) and 12(b)(6), made applicable here by

Bankruptcy Rules 7008 and 7012, and to apply those requirements to determine whether Middletown has shown that King Center does not state plausible claims for relief.

As the Supreme Court has explained, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding a motion to dismiss, the court must "'accept all factual allegations as true and draw all reasonable inferences'" in favor of the plaintiff. *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the same time, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  That is, a court should consider the well-pleaded factual allegations of the complaint together with the reasonable inferences that they support, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  As other courts have noted, plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 406 (Bankr. S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 677).  And finally, it is the plaintiff's obligation to provide the "'grounds' of his 'entitlement to relief.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## Discussion

### Whether Middletown Has Shown that King Center's Claims Are Time-Barred

To prevail on its Motion to Dismiss on grounds that King Center's claims are barred by the Middletown Charter and its two-year limitations period, Middletown must show that King Center does not allege plausible grounds to conclude that its claims are timely. That is, Middletown must show that King Center does not plausibly allege facts sufficient to show that Charter Section 105 and its two-year limitations period do not bar these claims.

Charter Section 105 operates as a statute of limitations against actions to set aside tax deeds executed by Middletown, and as a curative statute that places the burden on the party challenging the tax deed to show its deficiency. It provides:

> Every tax deed executed, and delivered by the City of Middletown pursuant to the Charter provisions of the City of Middletown, or any tax deed executed and delivered pursuant to any general or special law providing for the foreclosure of a tax lien by action in rem, shall be presumptive evidence that the action and all proceedings therein and all proceedings prior thereto from and including the assessment of the lands affected and all notices required by law were regular and in accordance with all provisions of law relating thereto. *After two years from the date of the recording of such deed the presumption shall be conclusive . . . [and] [n]o action to set aside such deed may be maintained unless the action is commenced and a note of pendency of the action [is] filed in the office of the Orange County Clerk prior to the time that the presumption becomes conclusive . . . .*

Middletown Charter, Title V, Section 105 (emphasis added).

Middletown argues, in substance, that based on King Center's own allegations in the Complaint, Charter Section 105 and the two-year statute of limitations that it contains serve to bar King Center's claims to recover the Property or its value in this adversary proceeding. This, in turn, calls for this Court to determine whether Middletown has shown that, based on King Center's allegations and the reasonable inferences that they support, all of the requirements of Charter Section 105 are met.

King Center responds, in substance, that its constructive fraudulent conveyance action is distinct from an action to "set aside" the Tax Deed, to which the limitations period in Charter Section 105 would apply, because the relief sought is different. For these reasons, it argues, the conclusive presumption of regularity should not extend to bar its fraudulent conveyance action because the purpose of Charter Section 105 is to bar claims of a procedural nature, not claims such as its fraudulent conveyance claim.

And King Center notes that this is consistent with decisions of New York courts that have applied similar statutes to bar claims arising from flawed procedures and processes, including claims of inadequate notice. As examples, it points to *In re Tax Foreclosure No. 35*, 71 N.Y.2d 863, 865 (1988), where the court affirmed the denial of the petitioner's claim that the notice provided in an *in rem* proceeding was inadequate, and declined to reach the petitioner's constitutional arguments. King Center also cites *In rem Tax Foreclosure Action No. 44*, 23 A.D.3d 290, 291 (N.Y. App. Div. 1st Dep't 2005), where the court held that the "Petitioner's conclusory denial of receipt of notice of the foreclosure action was insufficient to rebut the presumption of receipt raised by the deed conveying title to the City." *In rem Tax Foreclosure Action No. 44*, 23 A.D.3d at 291.

In effect, King Center argues that because it does not challenge the procedures used by Middletown or the adequacy of the notice that it received, the presumption of regularity and time bar set forth in the Middletown Charter should not apply to its claims.

### *Whether Middletown Has Shown that the Complaint Establishes that Middletown Executed and Delivered the Tax Deed Pursuant to the Middletown Charter or Other Applicable Authority*

In order to show that King Center's claims are time-barred by Charter Section 105, Middletown must first establish that the Complaint's factual allegations show that the Tax Deed

was "executed and delivered" by Middletown pursuant to Middletown's Charter or a "special law providing for the foreclosure of a tax lien by action in rem." Charter Section 105.

Middletown argues that the allegations of the Complaint show that it conveyed the property to itself by the October 22, 2010 quitclaim deed, naming itself as transferor and transferee on the title, after providing notice of the Conveyance to King Center. Middletown also argues that the allegations of the Complaint show that it satisfied the notice requirements of Charter Section 93 by sending the September 2009, March 2010, and May 2010 Letters to King Center.

Charter Section 93 sets forth certain procedures that are followed when there are unpaid taxes on real property. It provides for notice to the property owner, as follows:

> No owner whose deed . . . shall have been duly recorded . . . before the sale of any lien for any tax or assessment . . . shall be divested of all rights in such property, by reason of an unpaid lien or tax sale conducted pursuant to this title, unless sixty (60) days' notice in writing of such conveyance, shall have been given by the City . . . to such owner. . . by depositing such notice in the post office of said City, by certified mail return receipt requested and by regular mail, directed to the owner . . . at his or her place of residence as stated in the deed . . . .

Middletown Charter, Section 93(2).

Charter Section 93 also sets forth the procedure pursuant to which title passes to Middletown in the event that notice is given and the taxes remain unpaid:

> Upon expiration of the redemption period and completion of the procedures required herein, and upon execution by the City of a deed to a tax-delinquent parcel to the City or to a qualifying purchaser of an unpaid tax lien, the City or qualified purchaser shall be seized of an estate in fee simple absolute in such parcel and all persons, including . . . non-residents . . . who may otherwise have had any right, title, interest, claim, lien, or equity of redemption in or upon such parcel shall be barred and forever foreclosed of any such right, title, interest, claim, lien or equity of redemption, and the City or qualified purchaser may hold such parcel for itself or sell or release such parcel as provided by law.

Middletown Charter, Section 93(5).

In addition, Middletown argues that the New York State court has already concluded that "the owner of record received the requisite notice for due process purposes." *11 King Ctr. Corp. v. City of Middletown*, 2012 WL 10996625, at *6 (N.Y. Sup. Ct. Orange Co. Mar. 16, 2012), *aff'd as modified*, 115 A.D.3d 785 (N.Y. App. Div. 2d Dep't 2014). Accordingly, Middletown argues that because it has satisfied its notice obligation under Charter Section 93(4), the statute of limitations provided in Charter Section 105 bars King Center's action, and it must prevail on this aspect of its Motion to Dismiss. Reply at 3-4.

King Center responds that it does not "challenge . . . the procedure by which Middletown conveyed the Property to itself (questionable though it may be)," and that "the claim falls outside the narrow ambit of the City Charter limitations period." Opp. Mem. at 5. But it also asserts that its claims are nevertheless timely because there is "no precedent . . . [for] a local ordinance such as [Charter Section 105] to bar a . . . fraudulent conveyance claim that arises under federal and state law." *Id*.

And King Center asserts that the relief that it seeks is distinct from the precise relief that is the subject of Charter Section 105 and its two-year limitations period. That is, King Center argues that it seeks an order directing Middletown "to return the [Property] or its value" to King Center, and not an order setting aside the Conveyance, to which the two-year limitations period contained in Charter Section 105 applies. Opp. Mem. at 2. King Center argues, in substance, that an action to return the Property or its value would be subject to a longer limitations period, and that "[t]he City Charter simply does not trump an act of Congress or the [NY] DCL, each of which prescribes a longer limitations period which King Center has indisputably satisfied." *Id*. King Center states that it does not seek to set aside the Tax Deed, but it does seek to recover the value of the Property that was transferred.

Here, the allegations of the Complaint state:

- By letter dated September 10, 2009, Middletown advised King Center of the existence of "a delinquent tax, water and/or miscellaneous lien" on the Property and its intention to sell the Property to a third party if King Center did not pay the tax lien in full within "two (2) years from 10/30/09." Compl. ¶¶ 15, 18.

- By letter dated March 5, 2010, Middletown advised King Center of the existence of "unpaid taxes, assessments or liens" against the Property owed to Middletown, and its intention to convey King Center's ownership of the Property to Middletown on July 1, 2010, if King Center did not pay the delinquent amount. Compl. ¶ 16.

- By letter dated May 28, 2010, Middletown advised King Center of the existence of unpaid school and city taxes and water and sewer rents against the Property, and that on July 30, 2010, Middletown would "give a deed to the Property" to itself if the delinquent amounts were not paid by that date. Compl. ¶ 17.

That is, King Center's allegations show that on at least two occasions, in the March 2010, and May 2010 Letters, Middletown provided King Center with notice that the Conveyance could occur as early as July 1, 2010. King Center also alleges that each of these letters individually satisfies the requirement under Charter Section 93(4) that "sixty (60) days' notice in writing" be given to the property owner in advance of a conveyance to satisfy a tax lien. Compl. ¶¶ 15-17 (quoting Middletown Charter Section 93(4)). And indeed, King Center acknowledges that it does not challenge the procedure by which Middletown conveyed the Property to itself. Opp. Mem. at 5 (stating that "King Center challenges not the procedure by which Middletown conveyed itself the property.").

And while King Center insists that it does not seek to set aside the Tax Deed, the relief that it seeks would have the same practical effect. If labeling an action as one to recover property or its value could remove it from the two-year limitations period contained in Charter Section 105, Middletown could be subject to a claim to recover the value of a property

transferred in an *in rem* tax foreclosure proceeding for as much as six years after the date of the transfer, not for the two years provided by the limitations period contained in Charter Section 105. This result is not supported by the plain terms of Charter Section 105, or by the important goals of finality and closure that the limitations period aims to achieve.

For these reasons, Middletown has shown that King Center's allegations in the Complaint establish that Middletown executed and delivered the Tax Deed pursuant to the Middletown Charter, as required for the two-year statute of limitations to bar a claim to recover the Property under Charter Section 105.

### *Whether Middletown Has Shown that the Complaint Establishes that King Center Did Not Commence an Action To Set Aside the Tax Deed Within Two Years of the Conveyance*

In order to prevail on its statute of limitations defense, Middletown must also establish that the Complaint's factual allegations show that King Center did not commence an action within two years of October 22, 2010, the date of the quitclaim deed (the "Conveyance Date").

In the Complaint, King Center does not allege that it filed an action to set aside the Tax Deed within two years of the Conveyance Date. Nor does King Center allege or argue that the presumption of regularity set forth in Charter Section 105 does not apply to the Conveyance. Indeed, as noted, King Center acknowledges that it does not "challenge . . . the procedure by which Middletown conveyed the Property to itself (questionable though it may be)," and that "the claim falls outside the narrow ambit of the City Charter limitations period." Opp. Mem. at 5.

Rather, the Complaint states:

- The three letters sent by Middletown to King Center "were obviously inconsistent" with respect to the date by when the delinquent tax liens must be paid "to avoid the loss of the [Property] through tax foreclosure." Compl. ¶ 18; and

- King Center was unaware that "Middletown amended its Charter" by enacting Section 105, and that the October 30, 2011 deadline to pay the tax liens "had in effect become meaningless."  Compl. ¶¶ 19-20.

To be sure, King Center argues that despite the fact that it did not commence an action within the two-year limitations period established by Charter Section 105, it may nevertheless state a claim to avoid the Conveyance and recover the Property or its value, because Bankruptcy Code Section 544(b) permits this Court to avoid any transfer of an interest of a debtor in property "'that is voidable under applicable law by a creditor holding an unsecured claim,'" and that Mr. Pfeifer "was an actual unsecured creditor" on the date of the Conveyance.  Compl. ¶¶ 30-31 (quoting 11 U.S.C. § 544(b)(1)).  And King Center alleges that the Conveyance was made without fair consideration, and rendered it insolvent and with unreasonably small capital.  As discussed below, these claims are deficient on other grounds, including that the Complaint does not allege facts sufficient to state a plausible claim under the Bankruptcy Code because the transfer at issue was made by Middletown, not by King Center.

But even if it did state the elements of an otherwise plausible claim, statutes of limitations would serve no purpose if they did not bar claims regardless of their merit or source.  As the Supreme Court noted nearly eighty years ago:

> The statute of limitations is a statute of repose, designed to protect the citizens from stale and vexatious claims, and to make an end to the possibility of litigation after the lapse of a reasonable time. . . . It has long been regarded by this Court and by the courts of New York as a meritorious defense, in itself serving a public interest.

*Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 136 (1938).  And as one district court has observed, statutes of limitation are not inconsistent with a litigant's fundamental due process rights, including an opportunity to be heard:

> While it is undeniably true that access to the courts and an opportunity to be heard are fundamental aspects of procedural due process, it is equally clear that the bar

21

> imposed by a validly enacted and reasonable statute of limitations does not
> deprive a suitor of his day in court in derogation of that clause.

*Saffioti v. Wilson*, 392 F. Supp. 1335, 1339 (S.D.N.Y. 1975). As the same court noted, "'Statutes of limitation have been part of the law of every civilized nation from time immemorial. . . . Such statutes, having the effect of denying any judicial remedy for the enforcement of an otherwise valid claim, are justified on grounds of policy and as statutes of repose.'" *Saffioti*, 392 F. Supp. at 1339 n.5 (quoting *Hargraves v. Brackett Stripping Machine Co.*, 317 F. Supp. 676, 682-83 (E.D. Tenn. 1970)).

Statutes of limitations may have harsh consequences – indeed, it is inevitable that they *will* have harsh consequences when a party fails to assert a meritorious claim in a timely fashion and that claim is lost – but they also bring finality, and repose. Limitations periods reflect the balancing of interests between the right of an aggrieved party to seek redress, and the rights of all parties to know that a transaction is final and can no longer be challenged. And they serve an additional and important purpose in the context of claims related to taxes, where public policy favors the effective, timely, and definitive collection of unpaid taxes. *See 149-155 Swan St. Corp. v. City of Buffalo*, 206 Misc. 372, 377 (N.Y. Sup. Ct. Erie Co. 1954) (asking "[c]an it be said that the Legislature of this State cannot by statute fix a time beyond which no action can be maintained to recover real property lost in a delinquent tax proceeding – yet it can and does limit the maintaining of actions touching upon almost every other type of litigation . . . ? The question calls for no answer.").

For these reasons, Middletown has shown that King Center's allegations in the Complaint establish that King Center did not commence an action to set aside the Tax Deed within two years of the Conveyance, as required to satisfy the two-year statute of limitations applicable to a claim to recover the Property under Charter Section 105.

              *                *                *

Based on the entire record, Middletown has shown that King Center's claims to avoid the Conveyance and recover the Property or its value are subject to the two-year limitations period established by Charter Section 105, and that King Center did not commence an action to set aside the Tax Deed within two years of the Conveyance, as required to pursue its claims. For these reasons, Middletown's Motion to Dismiss the Complaint on grounds that the claims are time-barred is granted.

### *Whether Middletown Has Shown that King Center Does Not Allege a Plausible Claim Under Bankruptcy Code Sections 544(b) and 550*

As alternative grounds in support of its Motion to Dismiss, Middletown argues that even if these claims are timely, King Center does not allege a plausible claim to avoid and recover the conveyance of the Property under Bankruptcy Code Sections 544(b) and 550. To prevail on its Motion to Dismiss on these grounds, Middletown must show that King Center does not plausibly allege at least one element of this claim.

Middletown argues, in substance, that based on King Center's own allegations in the Complaint, King Center does not allege a plausible claim to recover the Property under Bankruptcy Code Sections 544(b) and 550 because it does not allege that *King Center*, as opposed to *Middletown*, transferred the Property when the Conveyance occurred.

In response, King Center argues that Bankruptcy Code Sections 544(b) and 550 allow it to avoid any transfer of an interest of a debtor in property "'that is voidable under applicable law by a creditor holding an unsecured claim,'" and to recover such an avoided transfer. Compl. ¶ 30 (quoting 11 U.S.C. § 544(b)(1)). Invoking NY DCL Sections 273 and 274 as the "applicable law," King Center argues that it alleges that Mr. Pfeifer is an actual creditor holding an

unsecured claim, that the Conveyance was made without fair consideration, and that it rendered King Center insolvent and with unreasonably small capital. Compl. ¶¶ 31-33.

Middletown replies that NY DCL Sections 273 and 274 apply only to voluntary conveyances made by a debtor, and not to non-collusive involuntary conveyances such as the transfer at issue here. Middletown also notes that it "is aware of no reported New York cases" that apply NY DCL Sections 273 or 274 to avoid a non-collusive involuntary transfer. Mot. to Dismiss ¶ 8.

## New York Debtor and Creditor Law Sections 273 and 274

To avoid the transfer of the Property as constructively fraudulent under NY DCL Sections 273 and 274, King Center must allege an element that is common to both grounds for relief – that it made the Conveyance. King Center must also allege additional distinct elements for each claim.

To avoid a transfer as constructively fraudulent under NY DCL Section 273, King Center must allege two additional elements. These are that the transfer was "made without 'fair consideration' and . . . [when] the transferor is insolvent or will be rendered insolvent by the transfer in question." *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005).

To avoid a transfer as constructively fraudulent under NY DCL Section 274, King Center must allege three additional elements. These are that the transfer was "made without 'fair consideration,' and . . . [when] the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital." NY DCL § 274.

## Whether Middletown Has Shown that King Center Does Not Allege a Plausible Claim Under NY DCL Section 273

Bankruptcy Code Section 544(b) permits a plaintiff to avoid a transfer made by the debtor that is avoidable under applicable state law – and here, that law is New York's Debtor and Creditor Law.  NY DCL Section 273 provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

NY DCL § 273.

To state a claim under NY DCL Section 273, King Center must allege that it made the Conveyance for less than fair consideration, and either that it was insolvent when it made the Conveyance or that it became insolvent as a result of the Conveyance.

And to prevail on its Motion to Dismiss King Center's claim to recover the Property or its value under NY DCL Section 273, Middletown must show that King Center has not alleged facts sufficient to state at least one of the elements of this claim – that King Center made the Conveyance, that it did not receive fair consideration, and either that King Center was insolvent when it made the Conveyance or that it was rendered insolvent as a result of the Conveyance.

*Whether Middletown Has Shown that King Center Does Not Adequately Allege that It Made the Conveyance at Issue*

The first element of a NY DCL Section 273 claim is that the debtor "(1) conveyed the property to the transferee."  *Kittay v. Flutie New York Corp. (In re Flutie New York Corp.*), 310 B.R. 31, 52 (Bankr. S.D.N.Y. 2004).  With respect to this element, the Complaint states that Middletown, not King Center, made the conveyance to itself in satisfaction of unpaid taxes and other charges.

In the Motion to Dismiss, Middletown argues, in substance, that King Center does not allege that it made the Conveyance because Middletown did not name King Center as the transferor on the quitclaim deed to the Property.  As a consequence, and as the Complaint

reflects, King Center is not the transferor who "made" the Conveyance.  Middletown also argues that it did not "acquire title" from King Center, but rather "acquired title to the Property by quitclaim deed dated October 22, 2010 . . . as the result of an *in rem* tax enforcement process authorized by the City's charter."  Mot. to Dismiss ¶ 4.

King Center responds that it has adequately alleged this element of its NY DCL Section 273 claim because it "made" the Conveyance – despite not being named on the quitclaim deed – inasmuch as it owned the Property in fee simple before the Conveyance Date, and received consideration for the Property when Middletown cancelled the Tax Debt.  King Center argues, in effect, that not being named on the quitclaim deed, and therefore not being the transferor, is a distinction without a difference.  King Center also argues by analogy that because an involuntary transfer can be fraudulent under Bankruptcy Code Section 548, it also can be fraudulent under Section 544, and that the Conveyance should be viewed as having been made by King Center for purposes of Section 544 and applicable state law.  King Center reasons that "[i]f a Court-authorized involuntary conveyance can be subject to a fraudulent conveyance claim, it must necessarily be true that King Center can challenge an involuntary conveyance nominally made by Middletown but effectively made by – and certainly on behalf of – the owner of the Property, King Center."  Opp. Mem. at 8.

King Center also responds that the definition of "conveyance" under NY DCL Section 270, which provides that "'Conveyance' includes *every* . . . release [and] transfer," is sufficiently broad to encompass Middletown involuntarily conveying the Property to itself.  NY DCL § 270 (emphasis added).

But King Center has not identified controlling or persuasive authority to the effect that an involuntary transfer is effectively "made" in the circumstances present here by the former owner

for purposes of NY DCL 273, even though the transfer may have been made nominally by another entity. Nor has King Center cited controlling or persuasive authority that supports its argument that the Bankruptcy Code may be employed in the circumstances present here, several years after the fact, to undo an otherwise valid and final *in rem* tax enforcement process such as the process employed by Middletown.

Here, the record shows that King Center alleges that Middletown made the Conveyance to itself, and in particular, that the Conveyance was an involuntary transfer by Middletown to itself in satisfaction of King Center's tax liens. That is, the Complaint does not describe a "conveyance . . . by a person who is or will become rendered thereby insolvent." NY DCL § 273. There are methods by which that transfer could have been challenged – including a timely action under Bankruptcy Code Section 548 – but those methods were not invoked here. As a result, King Center does not adequately allege the first element of a NY DCL Section 273 claim, that King Center made the Conveyance of the Property.

For these reasons, Middletown has shown that King Center does not allege facts sufficient to establish the first element of its claim based on NY DCL Section 273, that King Center made the Conveyance. For the same reasons, King Center does not state a plausible claim to recover the Property or its value as a constructively fraudulent conveyance under NY DCL Section 273.

*Whether Middletown Has Shown that King Center Does Not Allege a Plausible Claim under NY DCL Section 274*

As noted above, Bankruptcy Code Section 544(b) permits a plaintiff to avoid a transfer made by the debtor that is avoidable under applicable state law. NY DCL Section 274 provides:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is

fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

NY DCL § 274.  *See In re Sharp Int'l Corp.*, 403 F.3d at 53 (stating that a transaction may be avoided under NY DCL 274 "if it is made without fair consideration and  . . .  the transferor is engaged or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274.")  And "unreasonably small capital" is what is left after a transaction "effectively [leaves a debtor] with no capital," and a large amount of debt.  *Sharrer v. Sandlas*, 103 A.D.2d 873, 873 (N.Y. App. Div. 3d Dep't), *appeal denied*, 63 N.Y.2d 610 (1984).

To state a claim under NY DCL Section 274, King Center must allege that it did not receive fair consideration for the Property when it made the Conveyance, and that the Conveyance was a transaction "for which the property remaining in [its] hands after the conveyance is an unreasonably small capital."  NY DCL § 274.

And here again, to prevail on its Motion to Dismiss King Center's claim to recover the Property or its value under NY DCL Section 274, Middletown must show that King Center has not alleged facts sufficient to state at least one of the elements of this claim – that King Center made the Conveyance, that it did not receive fair consideration, and that King Center was left with "an unreasonably small capital" as a result of the Conveyance.

*Whether Middletown Has Shown that King Center Does Not Adequately Allege that It Made the Conveyance at Issue*

Similar to NY DCL Section 273, the first element of a NY DCL Section 274 claim is that the transfer is a "conveyance . . . when the person making it is engaged . . . in a business or transaction for which the property remaining in his hands after the conveyance after the conveyance is an unreasonably small capital."  NY DCL § 274.  With respect to this element, the

Complaint states that Middletown, not King Center, made the conveyance to itself in satisfaction of unpaid taxes and other charges.

Here, as noted above in the context of King Center's NY DCL Section 273 claim, the record shows that King Center alleges that Middletown made the Conveyance to itself, and that the Conveyance was an involuntary transfer by Middletown to itself in satisfaction of King Center's tax lien debt. Viewed another way, the Complaint does not set forth facts sufficient to show that King Center was "the person making [the conveyance]," as required by the statute. Rather, King Center alleges that when Middletown, acting in place of King Center, made the Conveyance, this constituted a transaction that left King Center with "an unreasonably small capital." That is, the Complaint states that Middletown, and not King Center, made the Conveyance. As a result, here too, King Center does not adequately allege the first element of a NY DCL Section 274 claim, that King Center made the conveyance of the Property.

Finally, King Center correctly notes that several courts have recognized claims to avoid transfers of property through involuntary *in rem* tax foreclosure proceedings, and characterizes this as a "strong emerging trend under the Bankruptcy Code" that this Court should follow. Opp. Mem. at 10. These decisions, from the Northern and Western Districts of New York, decline to extend the presumption articulated by the Supreme Court in *BFP v. Resolution Trust Corp.* – that a mortgage foreclosure sale yields reasonably equivalent value – to *in rem* tax foreclosures. These decisions recognize that "[t]he plain language of Bankruptcy Code § 548 permits the Trustee to avoid 'any transfer' – including a valid state tax foreclosure proceeding – that occurred within two years prior to the filing of the bankruptcy petition and involved actual or constructive fraud." *Clinton Co. Treas.*, 511 B.R. at 41.

But these cases, and the trend that they may evidence, do not lend support to King Center's claims here. In each of the cases cited by King Center, the debtor or trustee initiated an action to avoid the transfer well within the two-year period that governs claims under Bankruptcy Code Section 548. And in each of these cases, the court declined to adopt a presumption that the modest value obtained in a tax foreclosure was reasonably equivalent value for the property transferred. *See In re Canandaigua Land Dev. LLC*, 521 B.R. at 477 (in bankruptcy case brought less than three months after the property transfer, finding that "the extinguishment of delinquent taxes of $16,594.99 in exchange for the Property, with a value of between $300,000 and $425,000, was not an exchange for reasonably equivalent value"); *Clinton County Treas.*, 511 B.R. at 41 (in bankruptcy case brought six months after property transfer, holding that the trustee may avoid a valid state tax foreclosure proceeding that occurred within two years prior to the filing of the bankruptcy case); *Cnty. of Clinton*, 496 B.R. at 283 (in bankruptcy case filed four months after property transfer, affirming that the debtor could employ Bankruptcy Code Section 548 to avoid a tax foreclosure and agreeing with other courts that "'the "amount of a tax lien is no evidence whatsoever of the property's value" and, thus, there [can] be no presumption that the debtor received reasonably equivalent value'"); *In re Herkimer Forest Prods. Corp.*, 2005 WL 6237559, at *4 (in bankruptcy case brought four months after a judgment of foreclosure transferring title was entered, concluding that where the value of the properties transferred "is approximately 11 times the debt . . . the value of the Properties is not proportional to the Debtor's tax debt, and the transfer is voidable as fraudulent under [Bankruptcy] Code § 548").

Here, however, King Center did not commence a timely action to avoid the transfer and recover the Property or its value under Bankruptcy Code Section 548, or under Charter Section

105. As a consequence, even if this Court were inclined to follow the trail blazed by these cases, it would not affect the disposition of King Center's claims in this adversary proceeding.

For these reasons, Middletown has shown that King Center does not allege facts sufficient to establish the first element of its NY DCL Section 274 claim, that King Center made the Conveyance. For the same reasons, King Center does not state a plausible claim to recover the Property or its value as a constructively fraudulent conveyance under NY DCL Section 274.

*The Question of Leave To Replead*

King Center requests leave to replead the Complaint to amend its claims for relief, in the event that the Motion to Dismiss is granted. Opp. Mem. at 11, n.8. Middletown questions whether there is any action available under state law or federal law that would afford King Center the relief that it seeks. Tr. 1/4/17 pp. 61-62, ECF No. 26.

Federal Rules of Civil Procedure 15, made applicable here by Bankruptcy Rule 7015, states that permission to amend a complaint should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court observed more than fifty years ago, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

And as this Court has noted, "[w]here a plaintiff has made a single attempt to state a claim, and the prospect of a plausible claim is suggested, but not established, by the allegations, then it may be that a court's discretion should tip in favor of allowing an amendment." *Ridley v. Deutsche Bank Nat'l Tr. Co.* (*In re Ridley*), 453 B.R. 58, 77 (Bankr. E.D.N.Y. 2011). At the same time, this Court has also noted that "where a proposed amended pleading would not survive

a motion to dismiss, it is within a trial court's discretion to deny leave to replead." *In re Ridley*, 453 B.R. at 77.

Rule 15 gives a court broad discretion to grant or deny leave to replead. As the Second Circuit has explained, "it is proper to deny leave to replead [under Rule 15] where there is no merit in the proposed amendments or amendment would be futile." *Cohen v. Singer*, 4 Fed. App'x 38, 40 (2d Cir. 2001). As one court has noted, "[i]t is well-established in the Second Circuit that leave to amend should be granted freely though the district court may exercise its discretion to deny a motion to amend if there is a good reason for it." *Ashanti Goldfields Sec. Litig.*, 2004 WL 626810, at *2 (E.D.N.Y. Mar. 30, 2004). Leave to file an amended complaint has been denied for reasons "such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). *See Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010) (affirming the district court's denial of leave to amend a complaint where amendment would be futile because the proposed allegations were identical to those dismissed). Ultimately, the question of leave to replead is committed to the sound discretion of the court.

Here, as noted, King Center requests leave to replead in its opposition memorandum. The Court notes that this is King Center's first attempt to state these claims in this Court, and that in some respects, they raise novel questions of law. And both parties acknowledge the large disparity between the amount owed by King Center to Middletown and the value of the Property that was conveyed. At the same time, the Court has concluded that as set forth in the Complaint, King Center's claims to recover the Property or its value are time-barred, and separately, that King Center does not allege a key fact that is necessary to its claims under NY DCL Sections 273 and 274 – that it made the conveyance at issue. In light of this, it is unclear whether "the

prospect of a plausible claim is suggested," but not established, in the Complaint.  *In re Ridley*, 453 B.R. at 77.

For these reasons, and based on the entire record, King Center may file a motion for leave to amend the Complaint, together with a proposed amended complaint, within sixty days of the entry of this Memorandum Decision.

## Conclusion

The Court concludes that Middletown has met its burden to show that King Center's claims to recover the Property or its value are time-barred by the terms of the Middletown City Charter.  The Court also concludes that, in the alternative, Middletown has met its burden to show that King Center does not allege a necessary element of its claims to recover the Property or its value under Bankruptcy Code Sections 544 and 550 and New York's Debtor and Creditor Law Sections 273 and 274, because it does not allege that it made the conveyance at issue.

For these reasons, and based on the entire record, the Court concludes that Middletown has met its burden to show that King Center does not state a plausible claim for relief, and the Motion to Dismiss is granted.

The Court also concludes that with respect to leave to replead, it is unclear whether "the prospect of a plausible claim is suggested," but not established, in the Complaint.  *In re Ridley*, 453 B.R. at 77.

For these reasons, and based on the entire record, King Center may file a motion for leave to amend the Complaint, together with a proposed amended complaint, within sixty days of the entry of this Memorandum Decision.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
      July 7, 2017

                **Elizabeth S. Stong**
          **United States Bankruptcy Judge**